# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

---

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

January 28, 2015

**By ECF and Hand Delivery**
Hon. Vernon S. Broderick
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re: **United States v. Jorge Barrios**, 14 Cr. 728 (VSB)
    **Defendant's Sentencing Memorandum**

Dear Judge Broderick:

    I write on behalf of my client, Jorge Barrios, in advance of his sentencing scheduled for February 11, 2015. Mr. Barrios has pleaded guilty to illegally re-entering the U.S., after having previously been removed subsequent to an aggravated felony conviction, in violation of 8 U.S.C. § 1326(a), (b)(2). The parties have stipulated that the applicable Guidelines range is 18-24 months. The PSR recommends a sentence of 18 months.

    I write respectfully to request that this Court impose a sentence of time served, that is, four and a half months. Mr. Barrios, who is now 49 years old, endured an abusive, poverty-stricken childhood in his native El Salvador. He emigrated to the U.S. in 1984 at age 19, during El Salvador's civil war, in search of better economic opportunities. A youth in an unfamiliar country, Mr. Barrios succumbed to alcohol and drug abuse and, during a six-week period in 1991, committed his only two prior crimes, attempted criminal possession of stolen property and arson. He served two years in New York State prisons and was removed in 1993.

    On returning to El Salvador, Mr. Barrios transformed his life. He worked, married, raised a family, and got clean and sober. In 2003, he even opened his own small business, a bakery. But gang members who prey on small business owners made

Hon. Vernon S. Broderick  
United States District Judge

January 28, 2015  
Page 2

Re:   **United States v. Jorge Barrios**, 14 Cr. 728 (VSB)  
       **Defendant's Sentencing Memorandum**

violent threats against him and his family, extorting so much money from Mr. Barrios that he was forced to close the bakery. Desperate to support his family financially, Mr. Barrios returned to the U.S. in 2011. Here, he has worked, sent his pay home, and engaged in no significant criminal conduct. Since his arrest in September 2014 for this offense, Mr. Barrios's family has struggled to make ends meet and faces eviction from their home. Mr. Barrios is a hardworking, selfless man who wants nothing more than to be reunited with his family. He has strong ties and concrete work prospects in El Salvador and will not risk further incarceration by returning to the U.S. A sentence of time served is appropriate.

**I.   Mr. Barrios's History And Characteristics**

Jorge Barrios was born in San Miguel, a city of 200,000 in eastern El Salvador, in 1965. Mr. Barrios's childhood was marked by abandonment, poverty, and abuse. See PSR ¶¶ 40-42. His parents, Rosa Melida Barrios and Juan Arturo Sanchez, separated during Mr. Barrios's infancy. Rosa took Mr. Barrios's sisters and moved to her hometown of Santa Tecla, five hours away. Mr. Barrios first met his mother when he was 13, and she played no meaningful role in his life. Instead, Mr. Barrios and his older brothers Edgar and Carlos remained in San Miguel with their father. An alcoholic with little interest in raising his boys, Juan left them in the care of his elderly parents, Otilia Quintanilla and Pastor Sanchez. Because of their age and ill health, Otilia and Pastor did not work; because of his drinking, neither did Juan. As a result, Mr. Barrios and his brothers grew up poor. Without money for food, they went hungry. Without money for school supplies or uniforms, they dressed in tattered clothes. Beginning when he was 8, Mr. Barrios also suffered his father's physical abuse. Juan beat Mr. Barrios and his older brothers Edgar and Carlos with his fists, sometimes every day. And "[s]ince Jorge was the youngest of the three boys he was the most affected." Exh. A, Edgar Barrios Letter.[1] The beatings lasted until Juan died, when Mr. Barrios was 16. Others in the neighborhood looked down on the family, and schoolmates mocked Mr. Barrios as a "drunk's son."

---

[1] All letters submitted on Mr. Barrios's behalf appear at Exh. A.

Hon. Vernon S. Broderick  
United States District Judge

January 28, 2015  
Page 3

**Re:** <u>**United States v. Jorge Barrios**</u>, **14 Cr. 728 (VSB)**  
**Defendant's Sentencing Memorandum**

Resolved to contribute what little he could to his family's resources, Mr. Barrios began working at age 14. He did odd jobs for neighbors, washed cars, cleaned tombstones at a cemetery, and harvested coffee on a plantation. PSR ¶ 42. With some difficulty, Mr. Barrios completed high school, PSR ¶ 55, and by virtue of vocational classes he took, earned a certificate in electrical work. By the time he finished high school, however, most of Mr. Barrios's family in El Salvador had vanished. His brother Carlos was killed in a motorcycle accident when Mr. Barrios was 17. PSR ¶ 40. His grandparents Otilia and Pastor, by then in their 90s, died of old age when Mr. Barrios was 19. And his brother Edgar had immigrated to the U.S. some years earlier. Alone, depressed by the loss of so many family members in such a short space of time, and without economic opportunities in a country ravaged by civil war and repressed by a violent military government, Mr. Barrios decided to join Edgar in the U.S. PSR ¶ 43. As Edgar explains, when Mr. Barrios left El Salvador, "he was a very young man with many traumas." Mr. Barrios arrived in 1984 at age 19 without lawful immigration status. PSR ¶ 43.

Mr. Barrios settled in the New York City area, living first in Englewood, New Jersey, and then in Long Island City, Queens. He worked in several restaurants, rising through the ranks from dishwasher, to busboy, to line cook, and also worked in construction. But Mr. Barrios was an immature young man whose difficult upbringing, in particular, his father's alcoholism and physical abuse, left him susceptible to substance abuse, too. Mr. Barrios began drinking beer, rum, and whiskey to intoxication. In the late 1980s, also began regularly smoking marijuana and sniffing cocaine. PSR ¶¶ 52-53. Mr. Barrios is ashamed of this distant period in his life. In an unfamiliar country where he did not speak the language, Mr. Barrios lacked close friends or guidance. He continued to bear the emotional aftereffects of the deaths in his family, his childhood poverty, and his father's abuse. PSR ¶ 40. And as is often the case with abused young people, Mr. Barrios also grieved his father's death and the lack of a loving paternal presence in his life. As his sister-in-law Maria Antonia de Cortez writes, Mr. Barrios endured "so much suffering from his childhood ... he always felt his parents' absence." Mr. Barrios succumbed to the false consolation of alcohol and drug use, stopped working, and fell victim to the bad influences of other drinkers and drug users.

Hon. Vernon S. Broderick                                January 28, 2015
United States District Judge                                      Page 4

Re:   **United States v. Jorge Barrios**, 14 Cr. 728 (VSB)
      **Defendant's Sentencing Memorandum**

    In 1991, when he was 26 years old and at the low point of his battle with alcohol and substance use, Mr. Barrios committed his only prior offenses. See PSR ¶¶ 30-31. In September 1991, while drunk, Mr. Barrios stole a parked car in Queens. Police officers quickly stopped and arrested Mr. Barrios, who confessed immediately. He pleaded guilty to attempted criminal possession of stolen property in the third degree, in violation of N.Y. Penal Law §§ 110.00, 165.50, and was sentenced to 1-3 years. And in October 1991, Mr. Barrios made the terrible decision to accept $500 in exchange for setting a gasoline fire on the roof of a Brooklyn supermarket that he did not know was occupied. (He was arrested climbing down from the supermarket's roof at 3:06 a.m.). Thankfully, no one was injured, although the building sustained damage. Mr. Barrios again confessed immediately and pleaded guilty to arson in the third degree, in violation of N.Y. Penal Law § 150.10. He was sentenced to 2-6 years. These two offenses, committed during a six-week period more than 23 years ago, represent all of Mr. Barrios's prior criminal history.[2] He was incarcerated in New York for about two years, from 1991 to 1993. In 1993, at 28 years old, Mr. Barrios was removed from the U.S.

    On returning to El Salvador, Mr. Barrios turned his life around. He began working as an electrician, PSR ¶ 59, both on his own and with the Electric Company of the Orient in San Miguel. He soon built a reputation as reliable, hardworking, and generous. See Rosa Estela Aguilar Letter ("He is well known here for being an excellent electrician, the most fair with his clients. If there was a person who couldn't pay him, he would tell them 'don't worry, you can pay me later.'"). In 1997, he began a romantic relationship with Rosa Estela Aguilar, a childhood friend. The couple married in 2000 and had three sons, Carlos (now 20), Jorge Jr. (15), and Edgar (13). PSR ¶ 45. Determined not to repeat his father's mistakes, Mr. Barrios sought treatment for alcohol and substance abuse, attended Alcoholics Anonymous meetings, and got clean and sober.

---

[2] The PSR also notes a 1988 arrest in New Jersey, a 1997 arrest in El Salvador, and a 2014 arrest in New York. PSR ¶¶ 35-36, 38. As to the first two, the PSR provides almost no details about these remote events, and neither resulted in an adjudication of guilt, so this Court should give them no weight. Mr. Barrios's 2014 arrest is discussed below, see infra p. 7.

Hon. Vernon S. Broderick  
United States District Judge

January 28, 2015  
Page 5

Re: <u>United States v. Jorge Barrios</u>, 14 Cr. 728 (VSB)  
    Defendant's Sentencing Memorandum

PSR ¶¶ 52-54. In their letters, Rosa and all three sons have told this Court that Mr. Barrios is everything his own parents were not. He is "an excellent father ... tender, loving, and he cares about advising his children to do good" (Rosa Estela Aguilar Letter). <u>See also, e.g.</u>, Jorge Alberto Barrios Aguilar Letter ("He has been loving and responsible as any father."); Edgar Josue Barrios Aguilar Letter ("Thank God we have always been able to be close to our father. We have been able to receive his help, not only financially, but also emotionally and spiritually."). Marriage and fatherhood changed Mr. Barrios. As his brother Edgar writes, Mr. Barrios "made a mistake from which he learned and for which he is remorseful and he already paid for. Then he started a new phase in his life."

In 2003, flush with the optimism that accompanies a new marriage and a new family, Mr. Barrios and his wife decided to open a small bakery together. <u>See</u> Rosa Estela Aguilar Letter. At first, the business was profitable, but its profits caught the attention of the local <u>maras</u> (that is, gangs), affiliated with the notorious Mara Salvatrucha (MS-13). Gang members made phone calls to the family's home, demanding money. They followed Mr. Barrios on his delivery route to stores and restaurants, robbing him of the money he made from his sales. And they threatened Mr. Barrios and his family with physical violence, including murder. PSR ¶¶ 17, 59. Gang extortion is endemic in El Salvador, affecting, by one estimate, 80 percent of the country's small businesses. <u>See</u> Associated Press, <u>Success of Salvador Gang Truce: Stronger Gangs</u> (Sept. 7, 2014), <u>available at</u> http://bigstory.ap.org/article/success-salvador-gang-truce-stronger-gangs-0. Most victims do not (as Mr. Barrios did not) report extortion because law enforcement does little to combat the gangs' activities. <u>See id</u>. To keep his business open and his family safe, Mr. Barrios for several years paid $50-$100 per week in extortion money, almost a quarter of the bakery's revenues. PSR ¶ 17. But in time, the gangs' demands made the business unsustainable. Mr. Barrios closed the bakery in 2008, still owing thousands of dollars to the banks that loaned startup capital for the venture. Even then, the gang demands for money did not abate (although Mr. Barrios had less to give), and he remained fearful of gang violence.

Losing their business left the family in financial crisis. Mr. Barrios returned to work as an electrician, PSR ¶ 59, but he

Hon. Vernon S. Broderick  
United States District Judge

January 28, 2015  
Page 6

Re: **United States v. Jorge Barrios**, 14 Cr. 728 (VSB)  
    **Defendant's Sentencing Memorandum**

earned much less and the family eventually defaulted on the loans that launched the bakery. The family lost their home, which they had pledged as collateral. Money problems strained Mr. Barrios's relationship with Rosa, and the couple divorced in 2009. PSR ¶ 45. Mr. Barrios continued to do his best to pay the family's expenses, but in 2011, he reached the conclusion -- heartbreaking for any father -- that he could best sustain his family by working abroad. As Rosa explains, "Jorge decided to emigrate and work to support the family in order to give our children what they need: education, housing, clothing, and better stability."

## II. The Nature And Circumstances Of This Offense.

In 2011, Mr. Barrios sold his car and most of his possessions and raised the exorbitant sum of $8,000 to pay a _coyote_ to transport him to the U.S. Mr. Barrios entered via the land border with Mexico, again with no lawful immigration status, and returned to New York City in November 2011. PSR ¶¶ 17, 43. Mr. Barrios lived in Long Island City and worked as a day laborer in construction for several months, but the job proved too arduous. PSR ¶ 58. As he has aged, Mr. Barrios's physical condition has worsened. He suffers from chronic lower back pain that radiates with burning and cramping to his legs. In 2012, a CT scan and an MRI of his spine revealed degenerative disc disease and stenosis, which is a narrowing of the open spaces in the spine that puts pressure on the spinal cord and nerves. Exh. B.

Unable to continue in construction, Mr. Barrios worked at two delis in Washington Heights, where he moved. PSR ¶¶ 56-57. Musleh Zaid, Mr. Barrios's boss at the Sweet Apple deli, where Mr. Barrios worked from November 2012 to June 2014, writes that Mr. Barrios "was a good colleague and a hard worker. He was trustworthy and punctual." Mr. Barrios earned very little -- $400 to $500 per week -- but he sent as much as he could to his family, about $700 or $800 per month. To do so, he sacrificed. Kelly Barrios recalls accompanying her uncle on a trip to buy new sneakers for his sons. "When we [got] to the shoe store, I noticed his enthusiasm went down a little bit, once he started looking at the prices. ... [T]hey were a bit pricier than he had imagined, but again he had already promised my cousins and did not want to break that. He bought those sneakers even

Hon. Vernon S. Broderick  
United States District Judge

January 28, 2015  
Page 7

Re:  **United States v. Jorge Barrios**, 14 Cr. 728 (VSB)  
**Defendant's Sentencing Memorandum**

though it meant him wearing a thin Spring coat, all winter long in New York, working extra shifts, having no heat at home and other things he chose to sacrifice for the desire to give his kids the childhood innocence every person deserves."

Mr. Barrios's health has indeed suffered. In 2011 and 2012, he was hospitalized to treat arthritis and kidney problems. PSR ¶¶ 49, 58. He has received pain management treatment for his spinal disorders at Elmhurst Hospital Center since 2012. A 2013 note by a physician there observed that Mr. Barrios was "[p]ositive for depression" and recorded his "appearance" as "abnormal thin, in discomfort, sad affect." Exh. C. Mr. Barrios's life in the U.S. has had a single purpose: to sustain his family financially, whatever the personal cost to him. See Carlos Arturo Barrios Letter ("[M]y father left in order to be able to work, to earn more, and to pay debts from his old business. The most important thing for him is to help my mother, my siblings, and me.").

Mr. Barrios came to the attention of federal immigration authorities when, on July 11, 2014, he was arrested in Manhattan for entering the subway through the exit gate without paying the $2.50 fare. He was charged with criminal trespass in the third degree and theft of services, both misdemeanors, in violation of N.Y. Penal Law §§ 140.10(a) and 165.15(3). Mr. Barrios was released, but when he appeared in New York County Criminal Court on September 24, 2014, he was arrested by ICE agents on this charge and taken into federal custody. He has been detained at the MCC since September 24, 2014. Mr. Barrios quickly agreed to plead guilty pursuant to a modified fast-track agreement,[3] in which he agreed to assist in his removal following the completion of his federal sentence.

Mr. Barrios's detention has devastated not only him but his family as well. As Rosa writes, the family's "financial situation has changed dramatically after Jorge's most recent

---

[3] Under the fast-track policy of this District's U.S. Attorney's Office, a defendant who pleads guilty pursuant to a fast-track agreement ordinarily receives a 4-level reduction in his offense level. Because of his arson conviction, Mr. Barrios was ineligible for the full reduction and received only a 2-level reduction.

Hon. Vernon S. Broderick  
United States District Judge

January 28, 2015  
Page 8

Re:  **United States v. Jorge Barrios**, 14 Cr. 728 (VSB)  
      **Defendant's Sentencing Memorandum**

arrest. We don't have money to pay the rent of our home." Although Mr. Barrios's brother Edgar provides some assistance, it is not enough, and Rosa does not work. Mr. Barrios's remittances to El Salvador "paid for the electricity, the water, the rent, our children's school supplies, food, and clothing. We are now two months late on the rent and we are about to get kicked out onto the street." Rosa Estela Aguilar Letter. As his son Carlos, a college student, writes, "[m]y life has changed after my father went to jail. Our food has diminished, we don't have a way to pay the rent, the electricity, and the water. It has also affected my studies and buying school supplies." And as his son Jorge, an eighth grader, writes, "we stopped receiving the financial help my father gave us. We have never lacked in that regard, he has been responsible and ... we really need his help."

## III. A Sentence Of Time Served Is Sufficient, But Not Greater Than Necessary, To Serve The Statutory Sentencing Purposes.

In selecting a sentence, this Court takes as its "lodestar the parsimony clause of 18 U.S.C. § 3553(a)." United States v. Douglas, 713 F.3d 694, 700 (2d Cir. 2013). That provision directs sentencing courts to 'impose a sentence sufficient, but not greater than necessary, to comply with' the factors set out in 18 U.S.C. § 3553(a)(2)," namely, "proportionality, deterrence, incapacitation, and rehabilitation." Id. See also, e.g., United States v. Ministro-Tapia, 470 F.3d 137, 142 (2d Cir. 2006). "[D]istrict courts may impose sentences within statutory limits based on appropriate consideration of all the factors listed in § 3553(a)." Pepper v. United States, 131 S. Ct. 1229, 1241 (2011). To be sure, the Guidelines range is one such factor, but it is only one, and "the Sentencing Guidelines are just that, guidelines, and ... 'they truly are advisory.'" Douglas, 713 F.3d at 700 (quoting United States v. Cavera, 550 F.3d 180, 189 (2d Cir. 2008) (en banc)).

A.   The § 3553(a) Factors Favor A Sentence Of Time Served.

In this case, the Guidelines range of 18-24 months is far greater than necessary to achieve the statutory sentencing objectives. The § 3553(a) factors -- in particular, Mr. Barrios's difficult childhood, the remoteness of his criminal history, and his transformation into a law-abiding, hardworking

Hon. Vernon S. Broderick                                January 28, 2015
United States District Judge                                      Page 9

Re:  **United States v. Jorge Barrios**, 14 Cr. 728 (VSB)
     **Defendant's Sentencing Memorandum**

father dedicated to the welfare of his children -- call for a sentence of time served, that is, four and a half months.

   As to his "history and characteristics," § 3553(a)(1), Mr. Barrios has overcome childhood trauma and the substance abuse that followed it, and has become a dedicated and hardworking husband and father. His principal goal has been to care and provide for his family as his own parents did not. To be sure, Mr. Barrios committed two serious criminal offenses in the past, but those offenses occurred in a brief six-week period more than 23 years ago, when Mr. Barrios was abusing alcohol, marijuana, and cocaine. Mr. Barrios served two years in prison for those offenses and was removed to El Salvador. He has since transformed his life. He got clean and sober, married and raised three sons who love and miss him, and made personal sacrifices to improve his family's circumstances.

   As to the "nature and circumstances of the offense," § 3553(a)(1), Mr. Barrios remained in El Salvador for 18 years following his 1993 removal. He returned to the U.S. in acute fear of gang violence and to provide for his family in a time of particular financial distress. He worked hard, first as a day laborer, and then, when the work proved too strenuous, as a counterman at two delis. Mr. Barrios's only encounter with the criminal justice system on return to the U.S. was his arrest, in July 2014, for entering a Manhattan subway station through the exit gate without paying the fare. Mr. Barrios has worked steadily since re-entering in November 2011. Judges Rakoff and Marrero have previously agreed that "post re-entry conduct" of a defendant charged with illegal re-entry should be considered under § 3553(a). Judge Marrero has held that defendants who "return for non-criminal purposes and do not commit additional crimes" warrant special consideration for a below-Guidelines sentence. United States v. Constantine, 417 F. Supp. 2d 337, 341 (S.D.N.Y. 2006) (citing United States v. Reyes, 05 Cr. 362 (JSR) (Rakoff, J.)). As in Constantine, Mr. Barrios "maintained steady employment, paid taxes, and contributed to the support of his family." Id.

   Nor do the statutory purposes of sentencing, § 3553(a)(2), require a within-Guidelines sentence. The substantial number of below-Guidelines sentences imposed in illegal reentry cases in this District indicates that a Guidelines sentence is not

Hon. Vernon S. Broderick  
United States District Judge

January 28, 2015  
Page 10

**Re:   United States v. Jorge Barrios, 14 Cr. 728 (VSB)**  
**Defendant's Sentencing Memorandum**

invariably necessary "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2)(A). In FY 2012, judges in this District imposed non-Government-sponsored below-Guidelines sentences in about 44 percent of cases involving immigration offenses.[4] In FY 2013, the figure was about 42 percent.[5] (By the same token, these statistics indicate that a below-Guidelines sentence will not create an unwarranted sentencing disparity, see § 3553(a)(6).)

Neither the need "to afford adequate deterrence to criminal conduct" nor the need to "protect the public from further crimes of the defendant," § 3553(a)(2)(B), (C), justifies further incarceration. As to specific deterrence and incapacitation, Mr. Barrios poses a low risk of re-offending by returning to the U.S. Aside from his brother Edgar, Mr. Barrios has no significant ties to the U.S. His ex-wife and three children reside in El Salvador, and he wants nothing more than to reunite with them. His detention since September has been severely punitive. He has been unable to support his family members, who cannot make their rent and school tuition payments. Mr. Barrios understands that the only way to be in his family's life as a father and a provider is to remain at liberty, and he will not be free if he returns to the U.S. See Rosa Estela Aguilar Letter ("[W]e understand that Jorge made a mistake by returning to the United States. I know that he won't go back because he doesn't want to go back to prison; he wants to be with his family and he's already older and has health problems."). Moreover, Mr. Barrios is likely to face additional detention in immigration custody before he is removed. Once he returns to El Salvador, Mr. Barrios will be employable. He has earned a living as an electrician in El Salvador in the past, working on

---

[4] See U.S. Sent'g Comm'n, Statistical Information Packet, Fiscal Year 2012, Southern District of New York tbl.10, available at http://www.ussc.gov/sites/default/files/pdf/data-and-statistics/federal-sentencing-statistics/state-district-circuit/2012/nys12.pdf.

[5] See U.S. Sent'g Comm'n, Statistical Information Packet, Fiscal Year 2013, Southern District of New York tbl.10, available at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2013/nys13.pdf.

Hon. Vernon S. Broderick  
United States District Judge

January 28, 2015  
Page 11

Re: **United States v. Jorge Barrios**, 14 Cr. 728 (VSB)  
  **Defendant's Sentencing Memorandum**

his own and as a freelancer for a larger electrical engineering company that handles commercial and governmental contracts. Mr. Barrios will resume working as an electrician when he returns.

B.  The Guidelines Range And The PSR's Recommendation Do Not Merit Deference.

The only § 3553(a) factor that suggests that additional prison time is necessary is the advisory Guidelines range, see § 3553(a)(4), which the PSR embraces. Mr. Barrios does not dispute that 18-24 months is the correctly calculated range, but notes that this range is almost entirely the product of his decades-old New York State convictions. A downward variance is warranted to mitigate the effect of these stale convictions. See, e.g., United States v. Amezcua-Vasquez, 567 F.3d 1050, 1055 (9th Cir. 2009); United States v. Chavez-Suarez, 597 F.3d 1137, 1138 (10th Cir. 2010).

The Guideline applicable to illegal re-entry, U.S.S.G. § 2L1.2, starts with a base offense level of 8, but provides for a 12-level increase if a defendant previously was deported after a felony conviction for a "crime of violence" that does not receive criminal history points. § 2L1.2(b)(1)(A)(ii). Arson is a "crime of violence," see id. § 2L1.2 cmt. n.1(B)(iii), but because Mr. Barrios's conviction is so old, it does not receive criminal history points, PSR ¶ 31 (citing § 4A1.2(e)(3)). Nonetheless, the conviction triggers a 12-level increase and exposes Mr. Barrios to a substantially higher Guidelines range.[6]

---

[6] Mr. Barrios's prior conviction for attempted criminal possession of stolen property has a similar, but less severe, impact on his Guidelines range. Considering only that conviction, Mr. Barrios would have a base offense level of 8, an 8-level enhancement for removal following an aggravated felony conviction, § 2L1.2(b)(1)(C), and a 3-level reduction for acceptance of responsibility, yielding an offense level of 13. In addition, Mr. Barrios would likely have been eligible for the full 4-level fast-track reduction, yielding an offense level of 9. In criminal history category I, that corresponds to a Guidelines range of 4-10 months. If neither conviction were considered, Mr. Barrios would be at offense level 2 (base offense level 8, with a 2-level reduction for acceptance of responsibility and a 4-level fast-track reduction), criminal

Hon. Vernon S. Broderick  
United States District Judge

January 28, 2015  
Page 12

Re: **United States v. Jorge Barrios**, 14 Cr. 728 (VSB)  
      **Defendant's Sentencing Memorandum**

That impact is not rational and does not reflect sound penological policy. It punishes Mr. Barrios not for who he is today or his offense conduct in this case, but for the decades-old conduct of a different person.

In general, authorities have criticized the illegal reentry Guideline's scheme of prior-conviction enhancements. See, e.g., United States v. Perez-Nunez, 368 F. Supp. 2d 1265, 1268 (D.N.M. 2005); United States v. Galvez-Barrios, 355 F. Supp. 2d 958, 962 (E.D. Wis. 2005). Briefly, the Commission offered no empirical basis for the magnitude of the enhancements and no explanation for the decision to consider a defendant's prior record in calculating both his offense level and his criminal history. District courts have the authority to vary from § 2L1.2 ranges on the ground that the Guideline "was not derived from any empirical study of sentencing data or recidivism" and "was enacted by the Sentencing Commission with little deliberation and no empirical justification." United States v. Bonilla, 618 F.3d 102, 110 (2d Cir. 2010). See also, e.g., Kimbrough v. United States, 552 U.S. 85, 109 (2007) (reaffirming that sentencing courts may vary based on policy disagreements with Guidelines that "do not exemplify the Commission's exercise of its characteristic institutional role," in that they do not reflect "empirical data and national experience").

In this case, one particular deficiency warrants a downward variance, namely, the Guideline's failure adequately to account for the staleness of prior convictions in enhancing a defendant's offense level. See, e.g., Amezcua-Vasquez; Chavez-Suarez. Amezcua-Vasquez, which involved analogous facts, is instructive. There, the illegal reentry defendant received a 16-level enhancement for a prior crime of violence -- a 25-year-old conviction for attempted voluntary manslaughter and assault with great bodily injury arising from a stabbing during a bar fight -- even though the conviction was too old to receive criminal history points. 567 F.3d at 1052.[7] The Ninth Circuit

---

history category I, and the lowest range available under the Guidelines, 0-6 months. Thus, under either of these alternative calculations, time served would be a within-Guidelines sentence.  
[7] The Commission has since amended § 2L1.2 to reduce the enhancement to 12 levels if the prior conviction for a crime of

Hon. Vernon S. Broderick  
United States District Judge

January 28, 2015  
Page 13

Re: **United States v. Jorge Barrios**, 14 Cr. 728 (VSB)  
Defendant's Sentencing Memorandum

held that the resulting within-Guidelines sentence was substantively unreasonable "because of the staleness of [the defendant's] prior conviction and his subsequent history showing no convictions for harming others or committing other offenses listed in Section 2L1.2." Id. at 1055. Because the defendant's prior convictions "were very old and unrepresentative of [his] characteristics during the past many years, ... the Guidelines calculation yielded a sentence exceeding what was reasonable under § 3553(a)." Id. at 1056. See also Chavez-Suarez, 597 F.3d at 1138 ("We agree with the Ninth Circuit that the staleness of an underlying conviction may, in certain instances, warrant a below-Guidelines sentence.").

    The same reasoning calls for a downward variance here. Mr. Barrios's only prior convictions are 23 years old. His only subsequent law enforcement contacts are an arrest for unspecified reasons in El Salvador in 1997 and for fare beating in 2014. Even if it makes sense to take some account of a prior conviction, it is excessive and unreasonable to more than double a defendant's offense level, without any consideration of the age of the prior or its relevance to a defendant's present culpability. Viewed in the context of equivalent enhancements, the 12-level increase is disproportionate. See, e.g., U.S.S.G. § 3A1.4(a) (12-level increase if any offense "involved, or was intended to promote, a federal crime of terrorism"); U.S.S.G. § 2B1.1(b)(1)(G) (12-level increase if fraud or theft caused loss of $200,000 to $400,000). A sentence based on 23-year-old conduct would punish who Mr. Barrios was, not who he is. As his brother has told this Court, "Jorge today is a responsible father, a completely different person from the young man who came illegally to the United States because of the lack of safety there was in our country in the '80s." Judges in this District agree and have imposed below-Guidelines sentences based, in part, on the staleness of a defendant's prior convictions. See, e.g., United States v. Michael Kennedy, 11 Cr. 156 (NRB) (S.D.N.Y. Jul. 20, 2011) (range of 37-46, sentenced to 15 months based on staleness of prior conviction); United States v. Jose Antonio Fernandez-Ramirez, 10 Cr. 97 (DLC) (S.D.N.Y. Jun. 18, 2010) (range of 24-30; sentenced to time served of five months based on staleness of prior convictions);

---

violence does not receive criminal history points. U.S.S.G. App. C amend. 754 (eff. Nov. 1, 2011).

Hon. Vernon S. Broderick  
United States District Judge

January 28, 2015  
Page 14

Re: **United States v. Jorge Barrios**, 14 Cr. 728 (VSB)  
    **Defendant's Sentencing Memorandum**

United States v. Luis Rafael Gonzalez-Santana, 08 Cr. 1028 (JSR) (S.D.N.Y. May 18, 2009) (range of 37-46, sentenced to 14 months based in part on age of prior conviction).

**IV. Conclusion**

For the foregoing reasons, this Court should sentence Mr. Barrios to time served.

Sincerely,

/s/ Daniel Habib  
Asst. Federal Defender  
Tel.: (212) 417-8769

CC: AUSA Max Nicholas, Esq. (by ECF and email)